UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LOUISE BERARDO

        Plaintiff,

        v.          **REPORT AND RECOMMENDATION**
                08-CV-0642 (TJM)

MICHAEL J. ASTRUE
COMMISSIONER OF SOCIAL SECURITY,

        Defendant,

## I.  Introduction

Plaintiff Louise Berardo brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her applications for disabled widow's benefits ("DWB") and Supplemental Security Income ("SSI").[1] Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") denying her applications for benefits was not supported by substantial evidence and was contrary to the applicable legal standards. The Commissioner argues that the decision was supported by substantial evidence and made in accordance with the correct legal standards.

## II.  Background

On October 12, 2005, Plaintiff, then 53 years old, filed an application for DWB and SSI, claiming disability since February 15, 2005, because of depression, right leg and arm pain, right cheek pain, and a back problem (R. at 51, 203).[2] Her application

---

[1] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated March 13, 2009.
[2] Citations to the underlying administrative record are designated as "R."

1

was denied initially on February 24, 2006 (R. at 25-26, 201-02). Plaintiff filed a timely request for a hearing on March 30, 2006 (R. at 32).

On November 20, 2007, Plaintiff and a paralegal appeared before the ALJ (R. at 206-19).The ALJ considered the case *de novo* and, on November 30, 2007, issued a decision finding Plaintiff was not disabled (R. at 13-23). The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review on April 28, 2008 (R. at 3-6). On June 19, 2008, Plaintiff filed this action disputing her disability determination.

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

### III.   Discussion

#### A. Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be

---

[3] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).

deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).   "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[4] to

---

[4] The five-step process is detailed as follows:

determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

To be entitled to DWB, a claimant must establish that: (1) she is the widow of a wage earner who died while fully insured, (2) she is at least 50, but less than 60 years

---

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

of age, and (3) she is disabled, as defined in 42 U.S.C. § 423(d). 42 U .S.C. § 402(e)(1). In addition, the disability must have commenced within seven years of the latest of the following events: (1) the month in which the wage earner died, (2) the last month in which the claimant was entitled to widow's insurance benefits, or (3) the last month in which there was a previous entitlement to widow's benefits. 42 U.S.C. § 402(e)(4).

Based on the entire record, the Court recommends the Commissioner's decision be affirmed because the ALJ properly granted the treating physician's opinion less than controlling weight and the ALJ's conclusion that Plaintiff had the mental RFC to perform unskilled work was supported by the evidence of record.

### B. Analysis

#### 1. The Commissioner's Decision

As an initial matter, the ALJ found that Plaintiff was an unmarried widow of a deceased insured worker and that she had attained the age of 50, thus meeting the non-disability requirements for DWB (R. at 18). The ALJ further found that Plaintiff's prescribed period ends on February 29, 2012 (R. at 18). At step one of the sequential evaluation, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability (R. at 18). At step two, the ALJ found Plaintiff had the following severe impairments: "musculoskeletal pain, depression, and alcohol abuse" (R. at 18). However, at step three, the ALJ concluded that Plaintiff's impairments did not meet or equal one of the listed impairments (R. at 20). At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform the "full range of light work" and the mental capacity to perform the basic mental demands of unskilled work (R. at 20). In reaching these conclusions that ALJ gave "great weight" to the opinions of

examining consultative psychologist, Kerry Brand, Ph.D.; "some weight" to the opinions of non-examining reviewing psychiatrist, Abdul Hameed, M.D.; "great weight" to the opinions of examining consultative physician, Philip Gilly, M.D.; and "great weight but not controlling weight" to the opinions of treating physician, Inna Kudria, M.D. (R. at 19-21). The ALJ also considered Plaintiff's subjective complaints of pain and other symptoms, but found her "not entirely credible" (R. at 22). Finally, the ALJ concluded at step four that Plaintiff retained the RFC to perform her past work as a cashier as the work was generally performed (R. at 23). Therefore, the ALJ concluded that Plaintiff was not disabled within the meaning of the regulations (R. at 17, 23).

### 2. Plaintiff's Claims

Plaintiff argues that the ALJ's RFC determination is unsupported because (a) the ALJ improperly failed to grant the Dr. Kudria's opinions controlling weight, and (b) the ALJ's conclusion that Plaintiff could perform the basic mental demands of unskilled work is not supported by substantial evidence, especially given Dr. Brand's opinions. Plaintiff's Brief, pp. 3-7.

#### a. The ALJ Properly Weighed the Treating Physician's Opinion

Plaintiff argues that the RFC is unsupported because the ALJ failed to grant Dr. Kudria's opinions controlling weight. Plaintiff's Brief, pp. 5-6. Defendant argues that Dr. Kudria's opinions were not entitled to controlling weight because they were unsupported and inconsistent with the objective medical evidence. Defendant's Brief, pp. 8-9.

On August 15, 2006, Dr. Kudria provided a medical source statement opining that Plaintiff was limited to lifting and carrying no more than ten pounds, standing or

6

walking less than two hours in an eight-hour workday, and sitting less than six hours (R. at 181-82). Dr. Kudria opined Plaintiff was limited in the use of her upper extremities because she experienced "severe pain [with] repetitive pushing and moving arms" (R. at 182). Dr. Kudria indicated that Plaintiff could never climb, kneel, crouch, crawl, or stoop and only occasionally balance (R. at 182). Dr. Kudria further opined that Plaintiff could only occasionally reach, handle, finger or feel (R. at 183).

The ALJ gave "Dr. Kudria's opinion great weight, but not controlling weight," concluding the "opinion is without substantial support from the other evidence of record, including her own clinical findings and prescribed treatment" (R. at 21-22).

The regulations require an ALJ to give controlling weight to a "treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s)" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2); see also Rosa v. Callahan, 168 F.3d 72, 78-79 (2d Cir. 1999). However, "[g]enerally, where the treating physician issued opinions that are not consistent with the opinions of other medical experts," the treating physician's opinion will not be afforded controlling weight because "genuine conflicts in the medical evidence are for the Commissioner to resolve." Burgess , v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); Veino v. Barnhart, 312 F.3d 578, 588 (2nd Cir. 2002)).

After carefully reviewing the record, the Court concludes that the ALJ properly declined to grant controlling weight to Dr. Kudria's opinions because her opinions were not supported by objective medical evidence (R. at 146-49) and because they were

7

inconsistent with the opinions of Dr. Gilly, the examining consultative physician. Dr. Gilly examined Plaintiff on December 2, 2005 and stated "In my opinion, there are no limitations to be derived from today's evaluation of the cheek, the arm, or the leg" (R. at 149). Furthermore, neither Dr. Gilly's nor Dr. Kudria's examinations resulted in findings that would support the limitations opined by Dr. Kudria. For example, the only abnormalities Dr. Gilly noted during his examination were that "[c]laimant appears depressed with avoidance gaze" and had "tenderness to palpation on the right cheek . . . with decreased sensation to light touch along the right side of the nose" (R. at 147-48). Otherwise, Plaintiff had a normal gait, stance, and squat; no difficulty walking on heels and toes, no difficulty changing for the exam, getting on and off the examination table, or rising from the chair (R. at 147). Plaintiff had full flexion, extension, and lateral flexion in the cervical and lumbar spines (R. at 148). Plaintiff had negative straight leg raising tests on both legs (R. at 148).Dr. Gilly found Plaintiff had full range of motion in her shoulders, elbows, forearms, wrists, hips, knees, and ankles (R. at 148). Dr. Gilly further found full strength in Plaintiff's upper and lower extremities, physiologic and equal reflexes, and no other sensory deficits (R. at 148). Similarly, although Dr. Kudria assessed Plaintiff with low back pain or strain on three occasions in early 2005, each of Dr. Kudria's five physical examinations found no edema, good peripheral pulses, full range of motion in all joints, symmetric reflexes, good strength, normal heel and toe walking, normal gait, and no abnormal clinical findings (R. at 137, 143, 145, 185, 187).

     Because the evidence does not support Dr. Kudria's opinions, the Court concludes that the ALJ properly declined to grant controlling weight to Dr. Kudria's assessment of Plaintiff's physical capabilities. Therefore, the Plaintiff's argument that

the RFC is unsupported because the ALJ failed to adopt Dr. Kudria's opinions is unavailing.

Plaintiff also noted that despite the ALJ's belief that Plaintiff's visits with Dr. Kudria were infrequent, Plaintiff formed a treating relationship with Dr. Kudria and Plaintiff explained that lack of funds caused her to seek treatment infrequently and cease medications. Plaintiff's Brief, pp. 6-7. The Court notes that in assessing Dr. Kudria's opinions, the ALJ stated that "actual treatment visits were relatively infrequent" (R. at 21). However, the ALJ also explicitly found that "Dr. Kudria had a treating relationship with the claimant" (R. at 21). More importantly, when an ALJ does not give the treating source's opinion controlling weight, he considers listed factors, which include the frequency of examination. 20 C.F.R. § 404.1527(d)(2)(i). Therefore, the ALJ properly considered the fact that Dr. Kudria only treated Plaintiff on five occasions over two years (R. at 21). Also, the ALJ properly considered Plaintiff's testimony that she sought treatment infrequently because she lacked the money to pay for care in his credibility assessment (R. at 22). The ALJ noted that Plaintiff's statements were inconsistent with the evidence showing that even when she had Medicaid coverage she did not seek treatment (R. at 22, 217). See Social Security Ruling 96-7p, 1996 WL 374186, at *5 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").

### b. The ALJ Properly Found Plaintiff Could Perform the Basic Mental Demands of Unskilled Work

Plaintiff also argues that the RFC is unsupported because the ALJ's finding that Plaintiff could perform the basic mental demands of work is unsupported by Dr. Brand's

9

opinions. Plaintiff's Brief, pp. 3-5. Defendant argues that Dr. Brand's opinions support the ALJ's mental RFC finding because his opinions of Plaintiff's limitations are consistent with the ALJ's conclusion that Plaintiff had limitations but could nonetheless perform the basic mental demands of unskilled work. Defendant's Brief, pp. 5-7.

According to Social Security Ruling 85-15, "[t]he basic mental demands of competitive, remunerative, unskilled work" include three abilities: (1) "understand, carry out, and remember simple instructions"; (2) "respond appropriately to supervision, coworkers, and usual work situations"; and (3) "deal with changes in a routine work setting." Social Security Ruling 85-15, 1985 WL 56857, at *4 (S.S.A. 1985).

The Court concludes, after a review of the record, that the ALJ's finding that Plaintiff retained the mental abilities to perform the basic mental demands of unskilled work is supported by the record and particularly by Dr. Brand's opinions. Dr. Brand examined Plaintiff on December 2, 2005 and diagnosed her with major depressive disorder, anxiety disorder, and alcohol abuse in recent remission (R. at 154). Dr. Brand opined:

> With regard to vocation functioning, claimant can follow and understand simple instructions and directions, perform simple tasks independently. She can maintain concentration and attention. She may have some difficulty maintaining a regular schedule. She can learn new tasks and perform complex tasks independently. She may have some difficulties making appropriate decisions, relating adequately with others, or dealing appropriately with stress. Her difficulties are caused by fatigue and underlying symptoms of depression and anxiety.

(R. at 153).

The ALJ properly found Dr. Brand's opinions consistent with the basic mental demands of unskilled work (R. at 19-20). Dr. Brand clearly found that Plaintiff could

understand and carry out simple instructions and learn new tasks, consistent with the first ability (R. at 153). With respect to the second ability—responding appropriately to supervision, coworkers, and usual work situations—Dr. Brand opined that Plaintiff would have some difficulty relating to others, but Dr. Brand did not conclude that Plaintiff was unable to do these things (R. at 153). Finally, with respect to the ability to deal with changes in the work setting, Dr. Brand opined that Plaintiff would have some difficulty dealing appropriately with stress, but again did not preclude this ability (R. at 153). Moreover, there is no other evidence of record contradicting Dr. Brand's opinions or finding Plaintiff had greater mental limitations. The Court notes that the ALJ did not conclude that Plaintiff had no mental limitations. Instead, when determining Plaintiff's RFC, the ALJ "note[d] that, although the record indicates that the claimant could have some difficulty in social functioning and sustaining attention and concentration, the overall evidence does not indicate more than mild to moderate difficulties and supports an ability to perform the basic mental demands of work" (R. at 20) (citing Social Security Ruling 85-15). In light of the evidence consistent with the ALJ's mental RFC findings, the Court concludes that Plaintiff's second argument is unavailing.

## IV.    Conclusion

After carefully examining the administrative record, the Court finds the Commissioner's decision is supported by substantial evidence and determined in accordance with the applicable law.

Based on the foregoing, it is respectfully recommended that the Commissioner's decision denying disability benefits be AFFIRMED in accordance with this recommendation and pursuant to sentence four of 42 U.S.C. Section 405(g).

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED: May 26, 2010
Syracuse, New York

### Orders

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>**. Thomas v. Arn, 474 U.S. 140 (1985); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir.1989); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir.1988).

**SO ORDERED**.

Victor E. Bianchini
United States Magistrate Judge

DATED: May 26, 2010
Syracuse, New York